Dale A. MONROE, Petitioner,

v.

DEPARTMENT OF the TREASURY, Respondent.

Appeal No. 84–1523.

United States Court of Appeals, Federal Circuit.

Aug. 15, 1985.

William M. Pace, Aberdeen, Miss., for petitioner.

Stephen R. Bergenholtz, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett and Helene M. Goldberg, Washington, D.C.

Before BENNETT, SMITH, and BISSELL, Circuit Judges.

BENNETT, Circuit Judge.

This is an appeal from the order of the Merit Systems Protection Board (board), 20 M.S.P.R. 620 (1984), rendering final the initial decision of the presiding official issued December 13, 1983. We affirm.

## BACKGROUND

Petitioner Monroe had served in the Bureau of Alcohol, Tobacco and Firearms (the agency) for 12 years and was employed there as a special agent when his removal was proposed for falsification of government documents concerning the hours of his work and his contacts with a potential agency informant. The specific falsifications referred to in support of the charge included (a) misleading entries in a report of investigation submitted by Monroe to obtain approval for the use of the potential informant (Specification I), (b) six false or misleading diary entries concerning his meetings with the informant and his hours of work in other respects (Specification II), and (c) false entries on three administrative uncontrollable overtime reports (Specification III).

Monroe made an oral response to the charges before agency Deputy Director Sanders, the official initially designated to decide the case. Sanders, however, was transferred to another position and removed as deciding official. Without giving a recommendation or deciding on Monroe's proposed removal, Sanders prepared a written summary of the oral response hearing. This, together with a written statement by Monroe and other documents, was reviewed by the new deciding official, agency Deputy Director Zimmerman, who sustained all of the specifications and the proposed removal.

On appeal to the board, Monroe was afforded a full hearing where he was required by the presiding official to detail all of his objections to the written summary of his oral response that had been prepared by Sanders. Thereafter, the presiding official submitted a thorough opinion reviewing the evidence and making explicit credibility determinations. Specification I was found not to have been supported by a preponderance of evidence, but all of the other specifications were sustained.

## DISCUSSION

### A. *Oral Response Hearing*

Monroe claims that his oral response to Sanders was given with the expectation that the latter would at least make a decision or a recommendation about the proposed removal. As this did not occur, and as Monroe was not notified that it would not, it is asserted that he was denied his right to a properly conducted oral response hearing. Monroe claims that he would have been more aggressive at the agency level in pointing out errors in the summary by Sanders had he been advised of Sanders' true role in the process.

 The conduct of the oral reply hearing is governed by 5 C.F.R. § 752.404(c)(2) (1983), which states:

> The agency shall designate an official to hear the employee's oral answer who has authority either to make or recommend a final decision on the proposed adverse action. The right to answer orally in person does not include the right to a formal hearing with examination of witnesses unless the agency provides one in its regulations in accordance with paragraph (g) of this section.

Monroe argues that this means the official who hears the oral answer of an employee must either make or recommend a final decision on the proposed adverse action. We disagree.

"The law is silent on whom the agency may designate to hear an employee's oral answer. The Office's regulations require that the person designated be one who has delegated authority in the agency to make or recommend a decision." *Federal Personnel Manual,* ch. 752, subch. 3–3g(5) (December 31, 1980). No decision of this court has suggested what form the personal interview at the agency level ought to take. In the published order in *Miller v. United States,* 227 Ct.Cl. 618, 619–20 (1981), in response to an argument similar to that made here by Monroe, it was stated that:

> Plaintiff mistakenly assumes that the person charged with making the final decision is the *only* appropriate party to conduct an oral reply. We find no authority to support ... [this] position.

What is required is that the person who hears the answer "shall be [selected from] persons who have authority either to make a final decision on the proposed adverse action or to recommend what final decision should be made." (Emphasis in original.)

It has not been asserted that at the time of the oral response hearing Sanders lacked the authority to "make or recommend a final decision."

When Sanders was reassigned within the agency, it was appropriate that he prepare a summary of the oral response by Monroe. That summary was made available to Monroe, who submitted his own response detailing points of disagreement. Both were reviewed with other materials by Zimmerman before making his decision on the proposed removal. Thus, all of the information and arguments that Monroe made in the course of his oral reply were before the deciding official.

Ironically, the effectiveness of the oral response hearing may have been undercut through a procedural strategy adopted by Monroe. Despite the desire of Sanders to go over each specification with Monroe, the latter, who was in the process of revising his written response to the proposed removal but did not have a copy with him at the hearing, declined to cooperate, in order to avoid being caught, as he put it, "in a contradiction."

Assuming arguendo that in the conduct of the oral response hearing procedural error could be shown, Monroe still would not prevail because he has not demonstrated that the failure of Sanders to make a recommendation denied him the opportunity of "avoiding dismissal, however slim." *Cheney v. Department of Justice,* 720 F.2d 1280, 1285 (Fed.Cir.1983). Monroe expressed to Sanders his own preference to rely on his written response as to many matters. This response and his critique of the summary of the oral reply prepared by Sanders were before the deciding official. We are at a loss, therefore, to understand what in Monroe's case Sanders could have considered that was not also before Zimmerman.

■ In short, Monroe has not demonstrated the harmfulness of the purported error of the agency by a showing that the absence or cure of the error "might have caused the agency to reach a conclusion different than the one reached." 5 C.F.R. § 1201.56(c)(3). This burden falls on Monroe. *Id.;* 5 U.S.C. § 7701(c)(2)(A). *See generally Shaw v. United States Postal Service,* 697 F.2d 1078, 1080 (Fed.Cir.1983). "The court is not required to conjure up reasons why a procedure is harmful [merely] because of a bald allegation of harmfulness alleging different reasons or none...." *Cheney,* 720 F.2d at 1285.

The circumstances of this case present nothing approaching the egregiousness of agency procedures condemned in *Ricucci v. United States,* 425 F.2d 1252, 1256, 192 Cl.Ct. 1 (1970) (oral hearing before investigator chosen from outside employee's agency division for the apparent purpose of preventing employee "from learning anything he could use in his case") or in *Paterson v. United States,* 319 F.2d 882, 884–85, 162 Cl.Ct. 675 (1963) (personal hearing before inspector who developed the facts to substantiate proposed discharge). In *Cheney,* 720 F.2d at 1285, even the removal of a designated hearing officer after his inclination to mitigate the proposed penalty, while not favored by the court, was found not to have been harmful. Monroe has not shown that the conduct of his oral response hearing could have had an adverse impact upon him. *See also Swindell v. Veterans Administration,* 10 MSPB 691, 12 M.S.P.R. ——— (1982).

### B. *Ex Parte Contacts*

■ Monroe complains that a witness whose name appeared on his own witness list was interviewed without notice to Monroe by the agency attorney and by Deputy Director Zimmerman the day prior to the hearing before the board. Allegedly, at the hearing the testimony of the witness was adverse to Monroe, in contrast to his previous favorable statements.

Stressing that Zimmerman would have been a superior officer of the witness, Mon-

roe argues on the basis of *Sullivan v. Department of the Navy*, 720 F.2d 1266 (Fed.Cir.1983), that this allegedly improper agency contact should void the decision against him. *Sullivan*, however, is not applicable. The ex parte contacts there were not between a witness and the opposing attorney or one of the agency superiors of the witness. Rather, of significantly more impact on the rights of the employee to an impartial evaluation of the proposal for his removal, in *Sullivan* "a true adversary [to the employee] with motives of reprisal sought to pressure the deciding official into making a decision to remove the petitioner." *Id.* at 1272.

Further, it has not been argued that any statute or regulation prohibits the type of ex parte contacts of which Monroe complains. In the absence of such, we cannot find error in the contacts that resulted. *See DeSarno v. Department of Commerce*, 761 F.2d 657, 660 (Fed.Cir.1985) (individual proposing removal and agency official deciding case may even be identical, absent contrary "statute, regulation, policy, directive, Board decision, or court decision"); *Welcker v. United States*, 752 F.2d 1577, 1582–83 (Fed.Cir.1985); *Depte v. United States*, 715 F.2d 1481, 1484 (Fed. Cir.1983). Thus, we hold that no procedural error occurred in this regard.

█ Even were error to have been made out, it has not been shown to have been harmful, as required to effect reversal of the board decision. At the hearing, the witness was subject to cross-examination which disclosed to the presiding official the meeting of the day before. This alone would seem to afford adequate due process protection. *See id.* In addition, the presiding official determined not to affirm the charge contained in Specification I, and it was toward that charge that the testimony of the witness involved was substantially pertinent. Thus, Monroe has suffered no harmful, reversible error through the ex parte contacts here at issue. *See Shaw*, 697 F.2d at 1080.

C. *Substantial Evidence*

█ Monroe asserts that the agency decision was not supported by substantial evidence, pointing out weaknesses in the evidentiary support for some of the charges against him. Nevertheless, a case without weaknesses is not what is required to sustain agency action upon review at this level. As stated in *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984):

> We discharge our own duty when we apply section 7703 to review an MSPB decision regarding an adverse agency action to determine whether the contested decision complies with the applicable statute and regulations and whether it has a rational basis supported by substantial evidence from the record taken as a whole. The record need only disclose such relevant evidence as might be accepted by a reasonable mind as adequate to support the conclusion reached.

We find that the record here discloses that degree of relevant evidence as would support the conclusion of the board.

The appropriateness of the penalty has not been contested.

AFFIRMED.